# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 1, 2012        Decided August 20, 2013

No. 11-5316

CONSERVATION FORCE, INC., ET AL.,
APPELLANTS

v.

SALLY JEWELL, SECRETARY OF THE INTERIOR, IN HER
OFFICIAL CAPACITY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00495)

———

*John J. Jackson III* argued the cause and filed the briefs for appellants.

*James S. Pew* and *Emma C. Cheuse* were on the brief for *amicus curiae* Sierra Club in support of appellants.

*Michael T. Gray*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, KAVANAUGH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:   This appeal concerns the straight-horned markhor, an impressive subspecies of wild goat that inhabits an arid, mountainous region of Pakistan. Appellants are safari clubs, hunters, and international conservationists.  For more than a decade, they pressed the United States Fish and Wildlife Service to take certain administrative actions regarding the markhor.  They allege that the agency's failure to take those actions was -- among other things -- arbitrary and capricious.

As tempting as it may be to consider an arbitrary and capricious claim in a case involving a goat,[1] an array of justiciability problems -- mootness, ripeness, and standing -- require us to decline the opportunity.

I

The Endangered Species Act directs the Secretary of the Interior to determine whether any species is "endangered" or "threatened."  16 U.S.C. § 1533.  A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range."  *Id*. § 1532(6).  A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  *Id*. § 1532(20).

---

[1] *See* OXFORD ENGLISH DICTIONARY 2:868-69 (2d ed. 1989) (tracing the origins of the word "capricious" to the musical term "capriccioso," which denotes "a free fantastic style," and which in turn is derived from the Italian "capro," meaning "goat, as if 'the skip or frisk of a goat'").

In 1976, the Fish and Wildlife Service (FWS) classified the straight-horned markhor as endangered. 50 C.F.R. § 17.11(h); *see* Endangered Status for 159 Taxa of Animals, 41 Fed. Reg. 24,062, 24,067 (June 14, 1976). By the early 1980s, the population of straight-horned markhor had reached a "critical level," estimated at fewer than two hundred in their primary habitat, the Torghar Hills along the Pakistan-Afghanistan border. Reclassifying the Straight-Horned Markhor with Special Rule, 77 Fed. Reg. 47,011, 47,017 (Aug. 7, 2012).

In response to the depletion of the markhor population, local tribal leaders formed the Society for Torghar Environmental Protection (STEP) and reached out to wildlife biologists in the United States for support. 77 Fed. Reg. at 47,016-17. The result was the Torghar Conservation Project (TCP), which, according to the Fish and Wildlife Service, effectively eliminated poaching of the straight-horned markhor and led to a greater than ten-fold increase in the subspecies' population over the past three decades. *Id.* at 47,017. The program works by sanctioning a limited number of sport hunts by primarily foreign hunters, who pay large sums for the privilege of chasing this wild goat across its rocky and forbidding terrain. Those revenues benefit the local tribes and pay the salaries of local game guards, encouraging the community to invest in the animal's recovery. *Id.*

In 1999, the Fish and Wildlife Service received a petition from one of the individuals involved in the local markhor conservation effort, Sardar Naseer A. Tareen, who requested that the straight-horned markhor be reclassified from endangered to threatened. *See* 16 U.S.C. § 1533(b)(3)(A) (outlining mandatory procedures for responding to petitions to "add a species to, or remove a species from," the endangered and threatened lists). The Service issued a favorable initial finding on the petition and noted that it would commence a

status review of the entire markhor species. 90-day Finding on Petition to Reclassify the Straight-horned Markhor, 64 Fed. Reg. 51,499, 51,500 (Sept. 23, 1999). But the Service took no further action, despite its statutory obligation to make a final finding on the petition's merit "[w]ithin 12 months" after it was received. 16 U.S.C. § 1533(b)(3)(B). In 2010, several of the appellants, including Conservation Force, filed a new petition requesting the "same action" as Tareen's 1999 petition -- the issuance of a rule to downlist the straight-horned markhor from endangered to threatened. Reply Br. 8.

In the instant suit, Tareen, Conservation Force, and STEP have joined with an array of safari clubs and individual hunters to level two sets of claims against the Fish and Wildlife Service.[2] The first set challenges the Service's failure to act on Tareen's 1999 petition to downlist the markhor by issuing a finding on the merits of that request within the statutorily-required 12-month period. The second set of claims challenges the Service's allegedly unreasonable delay in processing applications to import parts of the bodies of slain straight-horned markhor, which the appellants describe as "trophies." We address each in turn.

---

[2] For the sake of convenience, this opinion collectively refers to the following appellants as "safari clubs": Conservation Force, the Wild Sheep Foundation, the Dallas Safari Club, the Houston Safari Club, the African Safari Club of Florida, Inc., the Grand Slam Club/Ovis, and the Conklin Foundation. We collectively refer to STEP and Tareen as "international conservationists," and to Barbara Lee Sackman, Alan Sackman, Jerry Brenner, and Steve Hornady as "hunters."

5

II

The appellants' first set of claims challenges the Fish and Wildlife Service's "failure to consider and proceed with" Tareen's 1999 petition for a rule downlisting the straight-horned markhor. Second Am. Compl. 25. Specifically, the appellants argue that the Service violated both the Administrative Procedure Act (APA) and the Endangered Species Act by failing to issue a 12-month finding on that petition. *See id*. at 24-26 (alleging violations of 5 U.S.C. §§ 706(1), (2), and 16 U.S.C. §§ 1533, 1537(b)). The district court dismissed those claims as time-barred under 28 U.S.C. § 2401(a), which states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *See Conservation Force v. Salazar*, 811 F. Supp. 2d 18, 27-28 (D.D.C. 2011). On appeal, the parties extensively briefed the issue of whether the claims can and should be heard notwithstanding the statute of limitations. Unfortunately -- in light of the effort the parties have invested -- resolution of the statute of limitations issue will have to await another day because the claims themselves have become moot.

In general, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (internal quotation marks omitted). This occurs when, among other things, the court can provide no effective remedy because a party has already "obtained all the relief that [it has] sought." *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 1984). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

On August 7, 2012 -- seven days after the reply brief in this appeal was filed -- the Service issued a "12-month finding" (albeit, not within 12 months) on Conservation Force's 2010 petition for a rule to downlist the markhor.[3] Reclassifying the Straight-Horned Markhor with Special Rule, 77 Fed. Reg. 47,011 (Aug. 7, 2012). That finding was favorable to the appellants. Indeed, it was accompanied by a proposed rule to downlist the species, "based on a review of the best available scientific and commercial data which indicates that the endangered designation no longer correctly reflects the status of the straight-horned markhor." *Id.* The finding included a lengthy background section that referenced Tareen's 1999 petition and acknowledged that a "12-month finding was never completed" on that earlier petition. *Id.* at 47,012-13.

The Service's publication of a 12-month finding on Conservation Force's 2010 petition renders moot the appellants' challenges to the Service's failure to publish such a finding with respect to Tareen's 1999 petition. It is true that the Service never technically completed a 12-month finding on Tareen's petition. But that alone cannot preserve appellants' claims for our review. Both Tareen's and Conservation Force's petitions sought precisely the same thing: a rule to downlist the straight-horned markhor. By taking action with respect to the latter petition, the Service effectively took action with respect to the former petition as well. *See* Oral Arg. Recording at 12:55 - 13:20 (statement by FWS counsel that the agency "considered the information brought in [the 1999] petition," that the recent finding "resolve[s] everything that was brought in the 1999 petition," and that "any decision at this point on the 1999 petition would be the same"). Accordingly, because the

---

[3] That action was taken pursuant to a settlement in a parallel case, *Conservation Force v. Salazar*, No. 11-cv-2008 (D.D.C. 2011). *See* FWS Br. 17-18.

appellants have "obtained all the relief that they sought," their claims relating to the 1999 downlisting petition are moot. *Monzillo*, 735 F.2d at 1459.[4]

III

The appellants' second set of claims concerns the alleged failure of the Fish and Wildlife Service to timely process four applications to import straight-horned markhor trophies. Although the Endangered Species Act generally prohibits the importation of an endangered species, *see* 16 U.S.C. § 1538(a)(1)(A); *see also id*. § 1532(8), (6), individuals may apply for a permit if importation furthers "scientific purposes" or "enhance[s] the propagation or survival of the affected species," *id.* § 1539(a)(1)(A); 50 C.F.R. § 17.22.

Appellants Barbara Lee Sackman, Alan Sackman, Jerry Brenner, and Steve Hornady each hunted and killed a straight-horned markhor and filed an application with the Service to import his or her trophy. *See* Second Am. Compl. 9-11. They allege that the Service's unreasonable delay in processing their applications violated the APA and the Endangered Species Act (and related agency regulations). *See id.* at 29-30 (alleging violations of 5 U.S.C. §§ 706(1), (2); 16 U.S.C. §§ 1533, 1537(b); and 50 C.F.R. §§ 13.11(c), 13.21, 17.22(a)). They also allege that the Service's delay violated their due process rights, by constructively depriving them of their property interests in possessing their markhor trophies. *Id.*

---

[4] Appellants' requested remedy was limited to injunctive and declaratory relief; appellants did not seek monetary damages. *Cf. LaRouche v. Fowler*, 152 F.2d 974, 977 (D.C. Cir. 1998) (noting that the mooting of requests for injunctive relief does not moot a case in which claims for damages remain). *See generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

at 26-29 (alleging violations of the 5th Amendment and 5 U.S.C. § 706(2)).

While this case was pending in the district court, the Fish and Wildlife Service processed and denied all four applications. *Conservation Force*, 811 F. Supp. 2d at 30. Thereafter, the district court dismissed the appellants' APA and Endangered Species Act claims as moot. *Id*. at 30-31. The court reached the merits of appellants' due process claims, however, dismissing those on the separate ground that "plaintiffs are unable to demonstrate that they have a fundamental right to or a constitutionally-protected property interest in the markhor trophies." *Id*. at 30.

On appeal, the appellants concede that, because the Service has now acted, the four individual hunters' unreasonable delay claims are moot. Oral Arg. Recording at 4:30 - 4:33; *see also* Appellants' Br. 59 (acknowledging that "these particular individuals . . . will likely not hunt markhor again"). We agree. But the hunters' related due process claims are necessarily moot as well. As noted, those claims rest on a theory that the agency's delay constructively deprived the hunters of their markhor trophies. Because the complained-of delay has now ended, any constructive deprivation that the delay generated has also necessarily ceased.[5] And because the individual hunters' due process claims are moot, so too are the same claims raised by the safari clubs in their capacity as representatives of those hunters. *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 584 (D.C. Cir. 2007) (holding that, when an association sues on

[5] At least in this case, the appellants do not assert that the agency's *denial* of their permits violated their due process rights. *See* Second. Am. Compl. 26-29; *compare Conservation Force v. Salazar*, 878 F. Supp. 2d 268, 270 (D.D.C. 2012) (challenging permit denials under a due process theory).

behalf of its members, its claims become moot if its members' claims become moot).  As for Tareen and STEP:  they have failed to articulate any theory of standing to raise a due process argument.  *See Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).

IV

What remains?  Quite a bit, the appellants contend.  Although the specific import applications have now been processed, the appellants maintain that the Fish and Wildlife Service's *pattern* of unreasonable delay persists.  The appellants' complaint alleged that the Service maintains a "practice" of "fail[ing] and neglect[ing] to process or approve" permits to import straight-horned markhor trophies.  Second Am. Compl. 23; *see* Appellants' Br. 48-51.  That pattern or practice of delay, they allege, "devalue[s] the trophies and obstruct[s] the conservation effort" of STEP and related organizations.  Second Am. Compl. 23.[6]

---

[6] On appeal, the appellants have amplified this argument in a subtle but significant way.  They now claim that the "[d]efendants have an ongoing policy of ignoring trophy import permit applications, *then denying them only when faced with legal action*."  Appellants' Br. 50 (emphasis added).  We are not obliged to consider this late-stage reformulation of appellants' challenge.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").  Indeed, our "general presumption against deciding claims not raised below is particularly strong where, as here, the claim turns upon factual questions not yet passed upon by the district court." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1043 (D.C. Cir. 2003).  In this case, the record is bare on several key factual issues, including:  how many times the FWS has thwarted litigation midstream by processing an import permit; whether agency officials have been instructed, via an express or implied policy, to delay

The appellants argue that their "pattern" challenge is not moot because "it seeks declaratory relief as to an ongoing policy." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). But plaintiffs who challenge an ongoing policy must still demonstrate both that "the request for declaratory relief is ripe" and that they have "standing to bring such a forward-looking challenge." *Id.* (quoting *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)). Appellants can do neither.

In determining whether a case is ripe, we generally evaluate two factors: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). "[W]hen an agency [policy] may never have its effects felt in a concrete way by the challenging parties[,] . . . the prospect of entangling ourselves in a challenge to such a [policy] is an element of the fitness determination." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007). Here, that element is dispositive.

In addition to proposing a rule to downlist the markhor, the Fish and Wildlife Service has also proposed a rule "to allow the import of sport-hunted markhor trophies taken from established conservation programs *without a threatened species permit*." Reclassifying the Straight-Horned Markhor with Special Rule, 77 Fed. Reg. 47,011, 47,025 (Aug. 7, 2012) (emphasis added). As appellants concede, once the rulemaking is finalized, "presumptively" no permit would be required to import straight-horned markhor trophies. Oral Arg. Recording at 23:00 - 23:18. Hence, any previous policy of delay in processing such

processing until sued; and whether such a strategy was employed with respect to the particular applications at issue here.

permits would no longer be relevant to these, or any, appellants again.

Of course, it may come to pass that the Service will decide not to finalize the proposed rule that liberalizes the importation of markhor trophies. It may then come to pass that one of the appellants will file a new application for a markhor import permit. And *then* it may come to pass that the Service will unreasonably delay the processing of that application. But we see no reason to "entangl[e]" ourselves in the issue based on such a speculative possibility. *Devia*, 492 F.3d at 424; *see also id.* (noting that part of the rationale for a determination that a claim is not ripe is that, "[i]f we do not decide [the claim] now, we may never need to."). That is particularly so because we see no hardship to the parties from withholding our consideration at this time. None of the appellants has an outstanding permit application that is presently being delayed. Nor does any have a concrete plan to apply for such a permit in the future. *See* Appellants' Br. 59.

Moreover, even if the appellants' "practice of delay" claim is ripe, they do not have standing to raise it. The "irreducible constitutional minimum" of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). And as we have held, "[t]he petitioner's burden of production in the court of appeals is . . . the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence.'" *Sierra Club*, 292 F.3d at 899 (quoting *Lujan*, 504 U.S. at 561).

In this case, there is no record evidence to support the claim that any of the appellants suffers an injury-in-fact from the Service's alleged ongoing policy of delay. Neither Tareen nor

STEP submitted any affidavit or evidence at all.  The four individual appellants whose applications have already been processed have indicated that they do not intend to hunt for markhor again.  *See* Appellants' Br. 59.  The declaration submitted by an additional hunter does not aver that he has such future plans.  *See* Smith Decl. (J.A. 177).  Nor do the affidavits of the safari clubs name any other members who have such plans.  *See* Thornton Decl. (J.A. 178); Jackson Decl. 1-6 (J.A. 209-214); *see also Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured.  Rather, the petitioner must specifically identify members who have suffered the requisite harm." (internal quotation marks omitted)).

We have repeatedly held that general allegations of injury are insufficient at this stage of the proceedings.  *See, e.g.*, *Americans for Safe Access v. DEA*, 706 F.3d 438, 443 (D.C. Cir. 2013); *Coal. for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102, 123-24 (D.C. Cir. 2012); *Sierra Club*, 292 F.3d at 899.  We do not insist on record evidence and affidavits to establish standing because we are misguided nitpickers, but rather because we must respect the limits of our jurisdiction.  *See Chamber of Commerce*, 642 F.3d at 199.  As we said long ago, "standing must be carefully controlled" to ensure "a practical separation of the meritorious sheep from the capricious goats." *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 872 (D.C. Cir. 1970).

V

For the foregoing reasons, the case is remanded with instructions to dismiss the complaint for lack of jurisdiction. The portions of the district court's order addressing the claims raised on appeal are vacated.  *See Nader v. Fed. Election*

*Comm'n*, No. 12-5134, 2013 WL 3956997 (D.C. Cir. Aug. 2, 2013); *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 184-85 (D.C. Cir. 2008); *City of Houston*, 24 F.3d at 1432.

*So ordered.*