# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 9, 2020          Decided February 16, 2021

No. 19-5116

COMMUNITY ONCOLOGY ALLIANCE, INC.,
APPELLANT

v.

OFFICE OF MANAGEMENT AND BUDGET, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01256)

---

*Laurence S. Shtasel*, *pro hac vice*, argued the cause for appellant. With him on the briefs was *Alan M. Freeman*.

*Courtney L. Dixon*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Alisa B. Klein*, Attorney.

Before: PILLARD and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  The plaintiff here seeks to challenge a reduction in Medicare drug reimbursement rates

caused by a sequestration order under the Balanced Budget Act. We hold that the district court lacked subject-matter jurisdiction over the case.

I

Through the Medicare program, the federal government pays for health care for the elderly and disabled. 42 U.S.C. § 1395 *et seq*. Under Part B of Medicare, the government reimburses physicians who provide covered outpatient services and drugs to beneficiaries. The Medicare Modernization Act establishes a reimbursement formula for certain Part B drugs: Section 1395w-3a of Title 42 provides that "the amount of payment determined under this section" is 106% of the drug's average sales price, as calculated under a statutory formula. *See id.* § 1395w-3a(b)(1). Section 1395w-3a further provides that "[t]here shall be no administrative or judicial review" of "determinations of payment amounts under this section." *Id.* § 1395w-3a(g)(1).

The Balanced Budget and Emergency Deficit Control Act of 1985 (Balanced Budget Act) sets forth various spending targets designed to reduce the federal budget deficit. 2 U.S.C. §§ 901–03. When the targets are not met, the Act requires the President to order automatic spending cuts known as sequestration. *Id.* § 904(f)(5). The Act contains special rules for "individual payments for services" covered by Medicare Part B, *id.* § 906(d)(1)(A), which cannot be reduced by more than two percent, *id.* § 901a(6)(A).

In 2013, Congress failed to reach a budget agreement. As a result, the President issued a sequestration order that required a two percent reduction in all Medicare reimbursements. This order has been extended many times and is now set to remain effective through 2030.

Community Oncology Alliance is an association of oncologists. The government reimburses many of its members for the cost of cancer drugs provided to patients through Medicare Part B. In this lawsuit, Community Oncology contends that sequestration does not apply to these drugs, which it says must be reimbursed at the full amount specified by the Medicare Modernization Act. Community Oncology invoked a private cause of action in the Balanced Budget Act, 2 U.S.C. § 922(a)(2). It requested declaratory and injunctive relief barring application of the sequestration order to Medicare Part B drugs.

Community Oncology moved to convene a three-judge court under the Balanced Budget Act. The district court denied the motion on the ground that section 922(a)(2) does not encompass its claims.

The district court then dismissed the case for lack of jurisdiction. It held that section 1395w-3a(g)(1) bars judicial review of Community Oncology's claim for increased reimbursement of Part B drugs. *Cmty. Oncology All., Inc. v. OMB*, No. 18-cv-1256, 2019 WL 1440132, at *2–3 (D.D.C. Mar. 31 2019). The court did not reach the government's alternative argument that 42 U.S.C. § 405(h), another Medicare provision, independently bars judicial review by stripping the district court of its federal-question jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291.

On appeal, Community Oncology contends that the district court had subject-matter jurisdiction under the Balanced Budget Act and the federal-question statute, 28 U.S.C. § 1331. It also contends that the Balanced Budget Act required convening a three-judge district court. We review these legal questions de novo. *See Am. Hosp. Ass'n v. Azar*, 895 F.3d 822,

825 (D.C. Cir. 2018); *Indep. Inst. v. FEC*, 816 F.3d 113, 115 (D.C. Cir. 2016).

II

To establish the district court's original jurisdiction, Community Oncology first invokes 2 U.S.C. § 922(a)(2), a provision of the Balanced Budget Act. It states that "[a]ny Member of Congress, or any other person adversely affected by any action taken under this title, may bring an action, in the United States District Court for the District of Columbia, for declaratory judgment and injunctive relief concerning the constitutionality of this title." By affording review specifically in our district court, section 922(a)(2) both confers subject-matter jurisdiction on that court and creates a private right of action. *See Wagner v. FEC*, 717 F.3d 1007, 1011–13, 1012 n.5 (D.C. Cir. 2013); *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979).

The Balanced Budget Act authorizes three types of declaratory or injunctive claims. Any Member of Congress may sue "on the ground that any order that might be issued pursuant to section 904 ... violates the Constitution." 2 U.S.C. § 922(a)(1). Any Member of Congress also may sue "on the ground that the terms of an order issued under section 904 ... do not comply with the requirements of this title." *Id.* § 922(a)(3). Finally, as noted above, any Member of Congress "or any other person adversely affected by any action taken under this title" may seek relief "concerning the constitutionality of this title." *Id.* § 922(a)(2). As quoted in the provisions above, the phrase "this title" refers to Title II of Public Law 99-177—*i.e.*, the Balanced Budget Act. *See* Pub. L. No. 99-177, § 200(a), 99 Stat. 1037, 1038 (1985).[1]

---

[1] The purported authorization of suits by individual members of Congress raises questions under Article III of the Constitution, *see*

This scheme permits private parties to raise facial constitutional challenges to the Balanced Budget Act, but not as-applied challenges to individual sequestration orders. Section 922(a)(2), the only provision of the Act that allows private litigation, permits Members of Congress and private parties to raise claims "concerning the constitutionality *of this title*"—*i.e.*, of the Balanced Budget Act itself (emphasis added). In contrast, section 922(a)(1) permits Members of Congress to claim that an "*order* that might be issued pursuant to" the Balanced Budget Act "violates the Constitution" (emphasis added). Section 922(a)(2) most naturally denotes facial challenges to the statute, while section 922(a)(1) most naturally denotes as-applied challenges to individual sequestration orders. Moreover, we must presume that these different formulations—sharply juxtaposed in immediately adjacent causes of action—mean something different. *See*, *e.g.*, *DHS v. MacLean*, 574 U.S. 383, 391–92 (2015); *Russello v. United States*, 464 U.S. 16, 23 (1983).

A broader reading of section 922(a)(2) would make nonsense of the statutory structure. If section 922(a)(2) were read to permit challenges to individual sequestration orders, then section 922(a)(1) would be entirely unnecessary. Members of Congress could challenge sequestration orders under either provision, and section 922(a)(1) would reach no farther than section 922(a)(2). We should avoid interpretations that "treat statutory terms as surplusage," *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995), much less interpretations that treat entire causes of action as such.

Community Oncology resists the charge of surplusage by emphasizing the phrase "might be issued" in section 922(a)(1).

*Raines v. Byrd*, 521 U.S. 811 (1997), but this case provides no occasion for confronting them.

It argues that this language authorizes Members of Congress to challenge proposed sequestration orders before they are issued, whereas section 922(a)(2) permits only retrospective challenges to "any action taken" in the past. We are not so sure, given the obvious Article III problem presented by challenges to orders not yet issued. *See*, *e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). In any event, Community Oncology's interpretation of section 922(a)(2) still would create surplusage. For if that provision permits as-applied challenges to *issued* sequestration orders, then it also permits Members of Congress to bring as-applied challenges to *proposed* sequestration orders. The requirement of a claim "concerning the constitutionality" of the Balanced Budget Act does not distinguish between those two kinds of as-applied challenges. And while section 922(a)(2) requires private plaintiffs to have been harmed by an action already "taken" under the Balanced Budget Act, it imposes no such restriction on Members of Congress. Thus, even if section 922(a)(1) permitted prospective challenges to proposed sequestration orders, Community Oncology's broad interpretation of section 922(a)(2) still would reduce section 922(a)(1) to surplusage.

As we have construed it, section 922(a)(2) does not cover the claims in this case. In its complaint, Community Oncology challenged "the application of the sequestration to Medicare Part B drugs that was made effective April 1, 2013." J.A. 23. It sought a declaratory judgment that "the sequestration cannot be applied to alter" the formula "for reimbursement of Medicare Part B drugs," as well as an injunction along the same lines. *Id.* at 23–25. Because Community Oncology sought to challenge one aspect of a sequestration order under the Balanced Budget Act, rather than the Act itself, section 922(a)(2) conferred neither subject-matter jurisdiction nor a cause of action. And although the Balanced Budget Act requires the merits of "[a]ny action brought under" section

922(a)(2) to be "heard and determined by a three-judge court," 2 U.S.C. § 922(a)(5), that provision did not bar the district court from determining whether this action was properly "brought under" section 922(a)(2) in the first place. *See Shapiro v. McManus*, 136 S. Ct. 450, 454–55 (2015). To the contrary, section 922(a)(5) provides for "a three-judge court in accordance with section 2284 of Title 28," which in turn empowers the initial district judge to "determine[] that three judges are not required," 28 U.S.C. § 2284(b)(1). For these reasons, the district court here properly declined to convene a three-judge court.[2]

## III

Community Oncology next contends that the district court had federal-question jurisdiction under 28 U.S.C. § 1331, which gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." But 42 U.S.C. § 405(h) strips the district courts of federal-question jurisdiction "on any claim arising under" Title II of the Social Security Act. And 42 U.S.C. § 1395ii extends that provision to "any claim arising under" Title XVIII of the Social Security Act, which created the Medicare program and is popularly known as the Medicare Act. Thus, if Community Oncology's claims arise under the Medicare Act, then the district court lacked federal-question jurisdiction.

---

[2] The district court held that section 922(a)(2) does not apply for a different reason. It viewed Community Oncology's claim as essentially a statutory one that the sequestration order violated the Medicare Modernization Act. J.A. 95; *see Dalton v. Specter*, 511 U.S. 462, 471–76 (1994). Community Oncology objects that its claim was a constitutional one akin to the successful challenge to the Line Item Veto Act in *Clinton v. City of New York*, 524 U.S. 417 (1998). Given our disposition above, we need not decide whether the claim is better characterized as constitutional or statutory.

Community Oncology asserts that its claims arise under the Balanced Budget Act rather than the Medicare Act. But as we have shown, the Balanced Budget Act creates neither subject-matter jurisdiction nor a cause of action that covers the claims. And in any event, the claims also arise under the Medicare Act, which is enough to strip away federal-question jurisdiction.

On the latter point, *Weinberger v. Salfi*, 422 U.S. 749 (1975), controls our decision. The plaintiffs in *Salfi* challenged the constitutionality of certain benefit restrictions under Title II of the Social Security Act. They argued that section 405(h) did not bar the suit because their claims arose under the Constitution, not Title II. The Supreme Court disagreed. It held that the "arising under" language in section 405(h) applies to any claim for which Title II "provides both the standing and the substantive basis for the presentation of [the plaintiffs'] constitutional contentions." *Id.* at 760–61. Thus, because the *Salfi* plaintiffs sought to recover benefits under Title II, their claims arose under Title II. *Id.* at 761 ("To contend that such an action does not arise under the Act whose benefits are sought is to ignore both the language and the substance of the complaint."). The Court has applied the same reasoning to bar claims seeking increased Medicare payments on constitutional grounds. *See*, *e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 11–14 (2000); *Heckler v. Ringer*, 466 U.S. 602, 615–16 (1984).

The claims here are plainly ones "arising under" the Medicare Act. As to standing, Community Oncology asserts an injury that its members have not received the full reimbursement allegedly owed to them under 42 U.S.C. § 1395w-3a—a provision of the Medicare Act, *see* Pub. L. No. 108-173, § 303(c)(1), 117 Stat. 2066, 2239–45 (2003). Likewise, as to the merits, Community Oncology asserts that

its members are entitled to additional reimbursement under the Medicare Act. And even if Community Oncology's claims could be described as arising under the Constitution or the Balanced Budget Act, all that matters under section 405(h) is that the claims also arise under the Medicare Act. *See Ill. Council on Long Term Care*, 529 U.S. at 5 (section 405(h) covers claims for increased Medicare payments based on "various [other] statutes"); *Salfi*, 422 U.S. at 760–61 (section 405(h) covers constitutional claims for increased Medicare payments). Because Community Oncology's claims arise under the Medicare Act, section 405(h) stripped the district court of its federal-question jurisdiction.

IV

Yet another provision, 42 U.S.C. § 405(g), provides a third possible basis for judicial review in this case. Section 405(g) authorizes the district courts to review "any final decision" of the Secretary of Health and Human Services on claims arising under the Medicare Act. *See Am. Hosp. Ass'n*, 895 F.3d at 825. The "final decision" must be "made after a hearing to which [the plaintiff] was a party," and review must proceed based on "evidence" in the administrative "record" and "findings" by HHS. 42 U.S.C. § 405(g).

By focusing review on a "final decision" of HHS, section 405(g) "imposes two distinct preconditions for obtaining judicial review of covered Medicare claims." *Am. Hosp. Ass'n*, 895 F.3d at 825. First, to secure a reviewable "final decision" on a claim, the plaintiff must have "presented" the claim to HHS. *See Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Second, the plaintiff must have fully exhausted all available administrative remedies within HHS. *See id.*

Here, Community Oncology does not seek review of any "final decision" on a claim that it—or any of its members—

presented to HHS. Community Oncology states that its members "that have presented claims for reimbursement for Part B drugs since the effective date of the sequestration have been reimbursed at the reduced amount" required by the sequestration order, rather than at "the amount expressly provided for in the Medicare Modernization Act." Okon Dec., ECF No. 28-1, ¶ 5. This simply notes that some members of Community Oncology have presented concrete reimbursement claims to HHS. But Community Oncology identifies no such claims; it provides no claim numbers, claim amounts, agency dockets, agency findings, agency records, or agency decisions of any kind. Accordingly, neither we nor HHS could determine whether these unspecified claims satisfy other requirements for review under section 405(g), such as complete exhaustion, *see Eldridge*, 424 U.S. at 328; proper venue, *see* 42 U.S.C. § 405(g); and a timely challenge filed within sixty days of the agency decision under review, *id.* Because Community Oncology did not identify any concrete reimbursement claim that its members presented to the agency, section 405(g) does not confer subject-matter jurisdiction.[3]

---

[3] Given our ruling that no provision conferred subject-matter jurisdiction on the district court, we need not consider that court's holding that the Medicare Modernization Act bars judicial review in this case. *See* 42 U.S.C. § 1395w-3a(g)(1). We also need not consider whether section 1395w-3a(g)(1) strips jurisdiction, as the district court concluded, or merely confers a defense on the merits. Finally, we do not consider whether a plaintiff, once it satisfies the presentment and other requirements of section 405(g), may seek the kind of broad, prospective relief that Community Oncology requests. *Cf. Porzecanski v. Azar*, 943 F.3d 472, 482 (D.C. Cir. 2019).

11

V

The district court lacked subject-matter jurisdiction over Community Oncology's claims and thus properly granted the government's motion to dismiss.

*Affirmed.*