**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1293
_____

TEMPLE UNIVERSITY HOSPITAL, INC.,
Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; ADMINISTRATOR
CENTERS FOR MEDICARE & MEDICAID SERVICES;
CHAIRMAN MEDICARE GEOGRAPHIC
CLASSIFICATION REVIEW BOARD
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-04533)
District Judge:  Honorable Mitchell S. Goldberg
_____

Argued:  April 29, 2021

Before:  PHIPPS, NYGAARD, and ROTH, *Circuit Judges*.

(Filed: June 21, 2021)
_____

Joseph D. Glazer                    **[Argued]**
THE LAW OFFICE OF JOSEPH D. GLAZER
Suite 200
116 Village Boulevard
Princeton, NJ 08540

      *Counsel for Temple University Hospital, Inc.*


Thomas Pulham                       **[Argued]**
UNITED STATES DEPARTMENT OF JUSTICE
APPELLATE SECTION
Room 7323
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Michael S. Raab
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
Room 7237
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

      *Counsel for Secretary United States*
      *Department of Health and Human Services;*
      *Administrator Centers for Medicare &*
      *Medicaid Services; Chairman Medicare*
      *Geographic Classification Review Board*

_____

OPINION OF THE COURT

_____

PHIPPS, *Circuit Judge*.

This case involves a dispute between a hospital and a federal agency over Medicare reimbursements. The core controversy concerns the hospital's geographical-area assignment for purposes of the wage index, which is used to calculate those reimbursements. The hospital, located in the City of Philadelphia, received a reclassification into the New York City area, which would sizably increase the hospital's Medicare reimbursements due to that area's higher wage index. Although a statute makes such reclassifications effective for three fiscal years, the agency updated the geographical boundaries for the New York City area before the close of that period. After doing so, the agency reassigned the hospital to an area in New Jersey with an appreciably lower wage index.

As a result of that reassignment, the hospital sued three agency officials in the Eastern District of Pennsylvania. But the Medicare Act channels reimbursement disputes through administrative adjudication as a near-absolute prerequisite to judicial review. And here, the hospital did not pursue its claim through administrative adjudication before suing in federal court. By not following the statutory channeling requirement, the hospital has no valid basis for subject-matter jurisdiction. Accordingly, we will vacate the District Court's judgment in favor of the agency officials and remand with

3

instructions to dismiss the complaint for lack of subject-matter jurisdiction.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Originally enacted in 1965 and later amended, the Medicare Act establishes a national health insurance program for persons 65 and older who are eligible for Social Security benefits, as well as for persons with certain disabilities. *See* 42 U.S.C. § 426(a), (b). *See generally* Social Security Amendments of 1965 (Medicare Act), tit. XVIII, Pub. L. No. 89-97, 79 Stat. 286. Through the Inpatient Prospective Payment System, the Medicare Part A Program reimburses hospitals for the operating costs of providing inpatient healthcare services to Medicare beneficiaries. *See* 42 U.S.C. § 1395ww(d)(2); *see also id.* § 1395ww(a)(4) (defining "operating costs of inpatient hospital services"). The amount of the operating-cost reimbursement is calculated on a per-patient basis using predetermined, fixed rates for each treatment category. *See id.* § 1395ww(d)(2), (4); 42 C.F.R. § 412.2(a) (detailing the basis of payment per discharge). Each year, the Secretary of Health and Human Services sets those fixed reimbursement rates. *See* 42 U.S.C. § 1395ww(b)(3)(B), (d)(3)(A)–(C); 42 C.F.R. § 412.64(d).

Although they are set in advance, Medicare reimbursement rates are not uniform throughout the nation. Instead, the Secretary annually adjusts the national reimbursement rate, *see* 42 U.S.C. § 1395ww(d)(3), based on a wage index for different geographic areas, *see id.* § 1395ww(d)(3)(E)(i) (requiring the Secretary to adjust the proportion of a hospital's costs "attributable to wages and wage-related costs" to reflect "the

4

relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level"); 42 C.F.R. § 412.64(h)(1) ("The wage index is updated annually.").

To group hospitals into geographic areas for calculating and applying the wage index, the Secretary has formally adopted regional designations from the Office of Management and Budget (OMB).  *See, e.g.*, Fiscal Year 2021 Final Rule,[1] 85 Fed. Reg. 58,432, 58,742 (Sept. 18, 2020); *see also Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 169 (2d Cir. 2006).  OMB calls those geographical regions Core Based Statistical Areas or CBSAs.  *See* Standards for Defining Metropolitan and Micropolitan Statistical Areas, 65 Fed. Reg. 82,228, 82,235–36 (Dec. 27, 2000).  Each CBSA contains a county or counties with at least one population core of 10,000 persons, which may be joined with adjacent counties that are socially and economically integrated.  *See id.* at 82,236; 2010 Standards for Delineating Metropolitan and Micropolitan Statistical Areas, 75 Fed. Reg. 37,246, 37,251 (June 28, 2010).  The Secretary calculates the annual wage index for each CBSA using "a

[1] The full title of the Fiscal Year 2021 Final Rule is "Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Final Policy Changes and Fiscal Year 2021 Rates; Quality Reporting and Medicare and Medicaid Promoting Interoperability Programs Requirements for Eligible Hospitals and Critical Access Hospitals."  Other relevant proposed and final rules feature titles of similar length. Such rules are referred to herein, not by their formal titles, but as proposed or final rules for a given fiscal year.

survey of wages and wage-related costs of short-term, acute care hospitals." Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,742. Then, the Secretary adjusts Medicare reimbursement rates by the wage index applicable to each CBSA (or rural area outside any CBSA). *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E); 42 C.F.R. § 412.64(h).

### 1. Changes to a Hospital's Assigned CBSA

As relevant here, a hospital's assignment to a particular CBSA may change through either of two events: an order granting a hospital's application for geographic reclassification or reassignment by the Secretary, usually after adoption of OMB's revised CBSA geographical boundaries.[2]

A hospital may request reclassification into another CBSA through an application to the five-member Medicare Geographic Classification Review Board. *See* 42 U.S.C. § 1395ww(d)(10). A requirement for reclassification is that the destination CBSA be within "close proximity" to the hospital. 42 C.F.R. § 412.230(b). An "urban hospital"

---

[2] The Secretary is not required to adopt OMB's CBSA boundaries and may define geographical boundaries differently for purposes of calculating the wage index. *See Bellevue Hosp.*, 443 F.3d at 175 ("[T]he statute is silent as to how this process is to take place, leaving the agency with broad discretion."); Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,745 ("We concur with commenters that [the agency] is not bound by statute to adhere to OMB definitions or delineations in calculating the [Inpatient Prospective Payment System] wage index."); *see also* 42 U.S.C. § 1395ww(d)(3)(E)(i).

6

satisfies this proximity requirement by being within 15 miles of the target CBSA; a "rural hospital" must be within 35 miles of the target CBSA. *Id.* If the Board grants the reclassification application, then the hospital receives the wage index applicable to the target CBSA. *See* 42 U.S.C. § 1395ww(d)(10)(C)(i). By statute, a reclassification is "effective for a period of 3 fiscal years," unless the hospital elects to "terminate such reclassification before the end of such period." *Id.* § 1395ww(d)(10)(D)(v). But if the Board denies the reclassification application, then the hospital may administratively appeal to the Secretary. *See id.* § 1395ww(d)(10)(C)(iii)(II) (incorporating the administrative appeal process from the Administrative Procedure Act, 5 U.S.C. § 557(b)). The Secretary's decision "shall be final and shall not be subject to judicial review." *Id.*

The Secretary may also reassign a hospital into a different CBSA after adopting revised CBSA boundaries. OMB typically revises CBSA boundaries every ten years based on the results of the decennial census, but OMB sometimes makes interim revisions. *See* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,743. When OMB updates the CBSA boundaries, the Secretary often adopts those new regional groupings and calculates new wage indexes for the redrawn CBSAs.[3] By doing so, the Secretary resolves the wage index for non-reclassified hospitals: they receive the wage index for the

---

[3] *See, e.g.*, Fiscal Year 2019 Final Rule, 83 Fed. Reg. 41,144, 41,362–63 (Aug. 17, 2018) (incorporating the updates from OMB Bulletin No. 17-01, issued between censuses); Fiscal Year 2015 Final Rule, 79 Fed. Reg. 49,854, 49,951 (Aug. 22, 2014) (incorporating the updates from OMB Bulletin No. 13-01, issued following publication of data from the 2010 census).

CBSA in which they are located. But that does not resolve the fate of a hospital that was previously reclassified into a CBSA with later-redrawn boundaries. *See* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,771 (explaining that "if CBSAs are split apart, or if counties shift from one CBSA to another under the revised OMB delineations, [the agency] must determine which reclassified area to assign to the hospital for the remainder of a hospital's 3-year reclassification period if the area to which the hospital reclassified split or had counties shift to another new or modified urban CBSA"). To assign such a hospital after the redrawing of CBSAs, the Secretary has followed a most-proximate-county policy. *See, e.g.*, Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,771–72; Fiscal Year 2015 Final Rule, 79 Fed. Reg. 49,854, 49,974–76 (Aug. 22, 2014); Fiscal Year 2005 Final Rule, 69 Fed. Reg. 48,916, 49,054–55 (Aug. 11, 2004). Under that approach, the Secretary reassigns a previously reclassified hospital to the redrawn CBSA containing the county from the original CBSA that is closest to the hospital (as long as that county remains outside the CBSA in which the hospital is physically located). *See* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,771.

## 2. Challenges to Medicare Reimbursements

The Medicare Act also provides a mechanism for hospitals to dispute the amount of reimbursement that they receive for inpatient care. Subject to timing and amount-in-controversy requirements, *see* 42 U.S.C. § 1395*oo*(a)(2)–(3), a hospital that receives reimbursements for the operating costs of inpatient services may challenge "a final determination of the Secretary as to the amount of the payment" through an appeal to another five-member board, the Provider Reimbursement Review Board. *Id.* § 1395*oo*(a)(1)(A)(ii) (permitting a challenge to the

8

amount of payment made under subsections (b) or (d) of 42 U.S.C. § 1395ww), (h) (defining the composition of the Provider Reimbursement Review Board); *see also id.* § 1395ww(b) (providing for the computation and adjustment of payment for "the operating costs of inpatient hospital services"), (d) (providing the process for determining prospective rates for inpatient care reimbursements).

Through such an appeal, a hospital may dispute not only the amount of its reimbursement but also the method for calculating that amount. *See* 42 U.S.C. § 1395*oo*(a)(1)(A)(ii); *see also St. Francis Med. Ctr. v. Shalala*, 32 F.3d 805, 812 (3d Cir. 1994) (recognizing that 42 U.S.C. § 1395*oo* "provides avenues by which a provider seeking Part A payments may contest both the amount of its payments and the methods by which those payments are calculated"). And because the method for computing the reimbursement amount involves the wage index, a hospital may – in challenging "a final determination" as to the amount of its reimbursement – dispute the applicable wage index. *See, e.g.*, *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 407 (1993) ("Pursuant to 42 U.S.C. § 1395*oo*, [six hospitals] filed an appeal to the Provider Reimbursement Review Board. . . [challenging] the wage index . . . ."). The Secretary has 60 days from the date of the Provider Reimbursement Review Board's decision to revise the Board's decision. *See* 42 U.S.C. § 1395*oo*(f)(1) ("A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision.").

Final decisions of the Provider Reimbursement Review Board are subject to judicial review. A hospital dissatisfied

9

with the Provider Reimbursement Review Board's decision (or the Secretary's revision) has 60 days to file a civil action challenging it in federal court. *See id.* To invoke that judicial-review provision, a hospital must first present the reimbursement challenge to the Provider Reimbursement Review Board. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 24 (2000) ("At a minimum, however, the matter must be presented to the agency prior to review in a federal court.").

This avenue for judicial review operates in conjunction with the jurisdiction-stripping provision of the Social Security Act. *See* 42 U.S.C. § 405(h). That provision, through its application to the Medicare Act, *see id*. § 1395ii, precludes subject-matter jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1346 (jurisdiction over claims against the United States) for claims "arising under" the Medicare Act. 42 U.S.C. § 405(h).[4]

Together, these statutes establish a "channeling requirement." *Ill. Council*, 529 U.S. at 19. Although the

---

[4] Although not relevant to Temple's present challenge to a determination in a table addendum to a final rule promulgated through the notice-and-comment process, the jurisdiction-stripping provision further diminishes the opportunities for judicial review of challenges to the Secretary's "findings and decision" made "after a hearing." 42 U.S.C. § 405(h). In such a circumstance, the Secretary's "findings and decision" may not be "reviewed by any person, tribunal, or governmental agency" except as provided by the Social Security Act and the Medicare Act. *Id.*; *id.* § 1395ii; *see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 346–47

jurisdiction-stripping provision eliminates federal-question jurisdiction for reimbursement claims arising under the Medicare Act, it leaves intact the judicial review provision of the Medicare Act, 42 U.S.C. § 1395*oo*(f)(1). Thus, as a general rule, claims for Medicare reimbursement must be channeled through the Provider Reimbursement Review Board before they may be challenged in court. *See Heckler v. Ringer*, 466 U.S. 602, 627 (1984) ("In the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and § 405(h), struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review of the Secretary's decisions takes place."); *see also Abington Mem'l Hosp. v. Heckler*, 750 F.2d 242, 244 (3d Cir. 1984) ("Section 405(h) of the Social Security Act, 42 U.S.C. § 405(h), as incorporated into the Medicare Act by 42 U.S.C. § 1395ii, removes from the federal courts any jurisdiction over claims arising under the Medicare Act for reimbursement, except to the extent allowed in 42 U.S.C. § 1395*oo*(f)." (statutory years omitted)).

Although the channeling requirement operates as near-absolute bar to federal-question jurisdiction for claims arising under the Medicare Act that have not been challenged administratively, an exception exists. When presentation of a challenge to the Provider Reimbursement Review Board "would not simply channel review through the agency, but would mean no review at all," channeling is not required. *Ill. Council*, 529 U.S. at 19; *see Bowen v. Mich. Acad. of Fam.*

(3d Cir. 2012) (holding, in a case challenging the outcome of an agency hearing, that the "except as herein provided" clause of § 405(h) "bar[s] virtually all grants of jurisdiction under Title 28").

11

*Physicians*, 476 U.S. 667 (1986) (originating this exception). This lone exception is quite "narrow." *Taransky v. Sec'y of the U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 307, 321 n.13 (3d Cir. 2014). It applies only when, "as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review." *Ill. Council*, 529 U.S. at 22–23. A postponement of judicial review that would add "inconvenience or cost in an isolated, particular case" does not suffice. *Id.* at 23.

## B. Factual Background and Procedural History

Despite Temple University Hospital's physical location within the Philadelphia CBSA, this dispute originates from a redrawing of the New York City CBSA. In September 2018, OMB redefined the CBSA for New York City to no longer include three New Jersey counties – Middlesex, Monmouth, and Ocean.[5] Those three counties were combined with a fourth – Somerset – to create a new CBSA, the New Brunswick-

---

[5] *See* Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Bull. No. 18-04, Revised Delineations of Metropolitan Statistical Areas, Micropolitan Statistical Areas, and Combined Statistical Areas, and Guidance on Uses of the Delineations of These Areas 61 (2018) (referring to the New York City CBSA as the New York-Jersey City-White Plains, NY-NJ CBSA); *see also* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,746.

Lakewood, NJ CBSA. *See* OMB Bull. No 18-04 at 61; *see also* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,746.

Before the Secretary decided to adopt OMB's proposed changes to these CBSAs, Temple applied for reclassification into the New York City CBSA. *See* Reclassification Appl. (submitted on September 3, 2019) (JA40). To achieve that result, Temple also requested designation as a rural hospital, which would enable it to use the 35-mile proximity requirement (instead of the 15-mile requirement for urban hospitals). *See* 42 C.F.R. § 412.230(b). With that designation, Temple would be within range of Monmouth County, which, at 34.7 miles away, was the nearest county in the then-defined New York City CBSA.

On February 21, 2020, still before the Secretary decided to adopt OMB's redrawn CBSAs, the Geographic Classification Review Board granted Temple's reclassification request. Under that decision, Temple was to receive the wage index for the New York City CBSA for three fiscal years – from 2021 through 2023 (October 1, 2020, through September 30, 2023). *See* Geographic Classification Rev. Bd. Decision (JA54); *see also* 42 U.S.C. § 1395ww(d)(10)(D)(v). That represented an upgrade to Temple's wage index: the New York City CBSA had a wage index of 1.3239 compared to the Philadelphia CBSA's wage index of 1.06.

Temple's success did not last as long as anticipated. Three months later, the Secretary provided notice of a proposed rule that would adopt OMB's 2018 revisions to the CBSAs. *See* Fiscal Year 2021 Proposed Rule, 85 Fed. Reg. 32,460, 32,696–97 (May 29, 2020). Under those proposed revisions, Monmouth County would transfer out of the New York City

CBSA and into the newly formed New Brunswick CBSA. *See* OMB Bull. No 18-04 at 61. As part of that notice, the Secretary proposed reassigning hospitals under the most-proximate-county policy. *See* Fiscal Year 2021 Proposed Rule, 85 Fed. Reg. at 32,717. Of the counties in the original New York City CBSA, Monmouth County was the closest county to Temple. Thus, under the proposal, Temple would follow Monmouth County in its reassignment to the New Brunswick CBSA. That CBSA, however, had a wage index of 1.0754 – appreciably lower than that of the New York City CBSA. *See id.* at 32,720.

The proposed rule also sought to mitigate the effects of the revised CBSA boundaries. One proposal was a transitional wage index for affected reclassified hospitals that would cap at five percent the wage-index decrease for the first year of the revised CBSAs. *See id.* at 32,718. Another proposal would allow a hospital to seek further reassignment to a CBSA that contained at least one county from its prior reclassified CBSA – as long as the hospital met the proximity requirements for that county. *See id.* at 32,720; *see also* 42 C.F.R. § 412.230(b). The notice of the proposed rule also reminded reclassified hospitals of the opt-out option: they could elect to terminate reclassification and return to their home CBSA, where they are physically located. *See* 85 Fed. Reg. at 32,717.

After publication of that notice, Temple followed a course not mentioned among the proposed mitigation measures. It applied for reclassification into another CBSA – the Vineland-Bridgeton, NJ CBSA – starting in fiscal year 2022. At that time, the wage index for the Vineland CBSA was 1.224 – higher than the wage index for the New Brunswick and Philadelphia CBSAs, but lower than the wage index for the New York City CBSA. The Geographic Classification Review

14

Board granted that request, enabling Temple's reclassification into the Vineland CBSA for fiscal years 2022 through 2024 (October 1, 2021, through September 30, 2024). Temple has until June 24, 2021 – forty-five days after the notice of proposed rulemaking for Fiscal Year 2022 – to withdraw from that reclassification. *See* 42 C.F.R. § 412.273(c)(1)(ii), Fiscal Year 2022 Proposed Rule, 86 Fed. Reg. 25,070 (May 10, 2021).

Temple's reclassification into the Vineland CBSA took on additional significance after the Secretary issued the final rule for Fiscal Year 2021. That rule adopted OMB's redefined New York City CBSA. *See* Fiscal Year 2021 Final Rule, 85 Fed. Reg. at 58,743–44. And through a table addendum to that rule, the Secretary reassigned Temple to the New Brunswick CBSA. *See id.* at 58,778 tbl. 2 (reassigning Temple based on its Medicare Provider Number (39-0027) and its case number before the Geographic Classification Review Board (21C0393)).

That reassignment prompted this lawsuit. Temple sued the Secretary and two other agency officials, contending that by statute, *see* 42 U.S.C. § 1395ww(d)(10)(D)(v), its reclassification into the New York City CBSA for wage index purposes should have been effective for three fiscal years – until September 30, 2023. In resolving the parties' competing summary judgment motions, the District Court entered judgment for the Secretary, reasoning that the Secretary's reassignment of Temple to the New Brunswick CBSA qualified for *Chevron* deference and must be upheld. *See Temple Univ. Hosp., Inc. v. Azar*, 2021 WL 431448, at \*5–11 (E.D. Pa. Feb. 8, 2021).

Temple then filed this appeal, which has been expedited to accommodate Temple's deadline of June 24, 2021, to withdraw from its reclassification into the Vineland CBSA. *See* 42 C.F.R. § 412.273(d)(4). Temple disputes the application of *Chevron* deference, which the Secretary defends. But the Secretary has also introduced a new dimension to this appeal: he contends that there is no subject-matter jurisdiction due to the channeling requirement and Temple's failure to present its challenge to the Provider Reimbursement Review Board. In exercising appellate jurisdiction over the District Court's "final decision," 28 U.S.C. § 1291; *see Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 400 (3d Cir. 2010), we will vacate the judgment and remand with instructions to dismiss the complaint for lack of subject-matter jurisdiction.

## II.   DISCUSSION

Federal courts are courts of limited jurisdiction, and without subject-matter jurisdiction, they lack authority to address the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). A challenge to subject-matter jurisdiction may be raised any time during a lawsuit (including for the first time on appeal). *See, e.g.*, *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016).

Here, although the Secretary did not dispute subject-matter jurisdiction in District Court, that defense has not been waived. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019). And subject-matter jurisdiction is lacking here. Temple cannot invoke federal-question jurisdiction due to the Medicare Act's

channeling requirement. The remaining potential jurisdictional bases that Temple identifies fare no better.

### A. The Channeling Requirement Precludes Temple from Invoking Federal-Question Jurisdiction.

The Medicare Act's channeling requirement eliminates federal-question jurisdiction for claims "arising under" the Medicare Act. *See* 42 U.S.C. § 405(h); *id.* § 1395ii. The Supreme Court has construed the 'arising under' language of the Medicare Act's channeling requirement "quite broadly." *Ringer*, 466 U.S. at 615. A claim arises under the Medicare Act when "'both the standing and the substantive basis for the presentation' of a claim is the Medicare Act." *Ill. Council*, 529 U.S. at 12 (quoting *Ringer*, 466 U.S. at 615); *Weinberger v. Salfi*, 422 U.S. 749, 761 (1975); *see also Cmty. Oncology All., Inc. v. Off. of Mgmt. & Budget*, 987 F.3d 1137, 1142–43 (D.C. Cir. 2021).[6]

Temple's claim satisfies those two elements. First, Temple has standing to sue based on the Secretary's action pursuant to his authority under the Medicare Act. Reassigning Temple

---

[6] For other statutes, involving the jurisdictional balance between federal and state courts, the Supreme Court has construed 'arising under' differently than it has for the Social Security Act and the Medicare Act, which instead implicate administrative law principles, such as ripeness and exhaustion. *Compare Gunn v. Minton*, 568 U.S. 251, 257 (2013), *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), and *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916), *with Ill. Council*, 529 U.S. at 12, and *Salfi*, 422 U.S. at 761.

17

from the New York City CBSA to the New Brunswick CBSA constitutes an injury-in-fact (a lower wage index), fairly traceable to the Secretary's action (the reassignment), and that injury-in-fact would be redressed by a favorable judicial decision (setting aside the reassignment). *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (articulating the three elements of Article III standing); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that for Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision"). Second, the Medicare Act provides the substantive basis for Temple's claim. As amended, it provides that reclassifications "shall be effective for a period of 3 fiscal years," 42 U.S.C. § 1395ww(d)(10)(D)(v), and the merits of Temple's claim depend on whether the Secretary's reassignment decision violated that three-year durational mandate. Thus, Temple cannot invoke federal-question jurisdiction here because its challenge to the New Brunswick CBSA reassignment arises under the Medicare Act.

### B. *Temple Cannot Avail Itself of the Narrow Exception to the Channeling Requirement.*

Temple contends that it qualifies for the lone exception to the channeling requirement. That exception applies only when application of the channeling requirement "would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. The channeling requirement would have no such effect here. Temple can dispute its reclassification to the New Brunswick CBSA before

18

the Provider Reimbursement Review Board because the wage index associated with that CBSA affects the amount of Temple's Medicare reimbursements. And under the Medicare Act, Temple can seek judicial review of the Board's determination. *See* 42 U.S.C. § 1395*oo*(f)(1) ("Providers shall have the right to obtain judicial review of any final decision of the Board . . . by a civil action commenced within 60 days of the date on which notice of any final decision by the Board . . . is received."). Temple tacitly acknowledges as much. The thrust of its argument is not that it has no opportunity for judicial review, but rather that it must surrender its subsequent reclassification to the Vineland CBSA to fully vindicate its three-year assignment to the New York City CBSA. But that concern does not trigger the narrow exception to the channeling requirement because Temple has an opportunity for judicial review of its reassignment out of the New York City CBSA. *See Ill. Council*, 529 U.S. at 22 (explaining that the channeling requirement cannot be circumvented on the grounds of "added inconvenience or cost in an isolated, particular case"); *see also Sw. Pharmacy Sols., Inc. v. Ctrs. for Medicare & Medicaid Servs.*, 718 F.3d 436, 441 (5th Cir. 2013) ("The fact that a plaintiff would suffer great hardship if forced to proceed through administrative channels before obtaining judicial review is insufficient to warrant application of the *Illinois Council* exception.").

Temple's reference to the COVID-19 pandemic does not alter this conclusion. Temple offers only conjecture and speculation for the proposition that the pandemic would have prevented or critically delayed administrative review of its claim. Those concerns cannot overcome the near-absolute force of the channeling requirement – especially considering

the Provider Reimbursement Review Board's publicly announced intention to keep operating on time.

### C. *None of the Remaining Bases for Subject-Matter Jurisdiction Have Merit.*

No other statutory grant of subject-matter jurisdiction applies to Temple's claim. In its complaint, Temple also identifies the Declaratory Judgment Act, the Administrative Procedure Act, the mandamus-jurisdiction statute, and the Medicare Act as potential bases for subject-matter jurisdiction.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not independently grant subject-matter jurisdiction. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."); *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017) ("The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy.").

Nor does Temple gain any jurisdictional traction from the Administrative Procedure Act. Although it waives sovereign immunity, *see* 5 U.S.C. § 702, and provides several causes of action, *see, e.g.*, *id*. § 706, the Administrative Procedure Act includes no independent grant of subject-matter jurisdiction, *see Califano v. Sanders*, 430 U.S. 99, 107 (1977); *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012).

The mandamus-jurisdiction statute, 28 U.S.C. § 1361, conditions its grant of jurisdiction on the unavailability of adequate alternative remedies. *See* 33 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Judicial

20

Review § 8312 (2d ed. Apr. 2021 update) ("To qualify for mandamus, however, a litigant must satisfy three requirements that courts have characterized as jurisdictional: (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." (citation and quotation marks omitted)); *see also Ringer*, 466 U.S. at 616 ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief . . . ."); *Semper v. Gomez*, 747 F.3d 229, 250–51 (3d Cir. 2014). And here, Temple has an adequate alternative remedy through administrative appeal to the Provider Reimbursement Review Board. *See* 42 U.S.C. § 1395*oo*(a)(1)(A)(ii); *see also St. Francis Med. Ctr.*, 32 F.3d at 812.[7]

Similarly, judicial review under the Medicare Act for reimbursement claims requires administrative exhaustion. *See* 42 U.S.C. § 1395*oo*(f)(1); *see also Ill. Council*, 529 U.S. at 24. And Temple did not present its wage-index challenge to the Provider Reimbursement Review Board. Without such presentation, the Medicare Act does not authorize judicial review of Temple's dispute.

---

[7] The All Writs Act, 28 U.S.C. § 1651(a), likewise does not provide a basis for jurisdiction over Temple's request mandamus relief: that statute does not independently grant subject-matter jurisdiction. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999); *United States v. Apple MacPro Comput.*, 851 F.3d 238, 244 (3d Cir. 2017).

\* \* \*

In sum, Temple's challenge to its reassignment to the New Brunswick CBSA arises under the Medicare Act, and so it is subject to the Act's channeling requirement. Under that requirement, Temple cannot rely on federal-question jurisdiction as a basis for subject-matter jurisdiction. And because Temple did not present its claim for administrative adjudication, it has no other valid basis for subject-matter jurisdiction. We will therefore vacate the District Court's judgment and remand with instructions to dismiss the complaint for lack of subject-matter jurisdiction.